Steven D. HAMILTON,
Petitioner-Appellant,

v.

O.L. McCOTTER, Director, Texas
Department of Corrections,
Respondent-Appellee.

No. 84–1319.

United States Court of Appeals,
Fifth Circuit.

Oct. 3, 1985.

Rehearing and Rehearing En Banc
Denied Nov. 15, 1985.

Rolf G. Asphaug, Houston, Tex. (Court Appointed), for petitioner-appellant.

Jim Mattox, Atty. Gen., Laurie A. Booras, Austin, Tex., for respondent-appellee.

Before CLARK, Chief Judge, GARWOOD and JOLLY, Circuit Judges.

GARWOOD, Circuit Judge:

This appeal is from a dismissal for abuse of the writ of a Texas prisoner's successive petition for habeas relief under 28 U.S.C. § 2254. The district court determined that all appellant's asserted grounds for relief in this his third federal petition had either been raised and disposed of in a previous section 2254 proceeding, or that they should have been previously raised, and consequently had been bypassed without legal excuse by the prior failure to assert them. The petition was dismissed pursuant to Rule 9(b) of the Rules Governing § 2254 cases, 28 U.S.C. foll. § 2254. We agree with the district court's dismissal as to all save one of the eleven grounds asserted in appellant's petition. Accordingly, we reverse the dismissal in part, and remand for further proceedings respecting the single viable issue raised in appellant's petition.

## FACTS AND PROCEEDINGS BELOW

Appellant Steven D. Hamilton was indicted by a Dallas County, Texas grand jury in April 1975 on a charge of armed robbery. He was found guilty by a jury, and sentenced to life imprisonment following a trial in June of that year. The conviction was affirmed on appeal in an unpublished opinion. *See Hamilton v. State*, 542 S.W.2d 427 (Tex.Crim.App.1976) (Table).

On December 12, 1977, appellant filed his first habeas corpus petition in state court. Proceeding *pro se*, he requested a copy of his trial record. The convicting court recommended denial, because the application did not contain the required verification by oath. The Texas Court of Criminal Appeals denied relief without written reasons on January 18, 1978.

On April 17, 1978, appellant filed his second *pro se* state habeas petition, the first to actually collaterally attack his conviction.[1] The convicting court recommended denial of this application on April 25; the Texas Court of Criminal Appeals did so without opinion on May 10, 1978.

On August 8, 1978, appellant, again proceeding *pro se*, filed his first federal habeas petition (C.A. 3–78–0974–G) in the Northern District of Texas, Dallas Division, attacking his state conviction, and alleging the following grounds for relief: (1) illegal search and seizure; (2) evidence obtained therefrom was improperly admitted at trial; (3) void indictment (insufficient allegations); (4) wrongfully admitted in-court identification; (5) ineffective assistance of counsel at trial; and (6) prosecutorial misconduct. By order dated August 24, 1979, the district court dismissed appellant's claims numbered (1) and (2), finding that appellant had had a "full and fair opportunity to litigate those issues [previously] in the state courts of Texas." *See Stone v. Powell*, 428 U.S. 465, 482, 96 S.Ct. 3037,

---

**1.** The grounds raised in this second state petition included: (1) illegal search and seizure; (2) use at trial of evidence obtained from the illegal search; (3) indictment void for failure to allege ownership of items stolen, and for giving no description of the allegedly stolen property; (4) in-court identification wrongly admitted; (5) ineffective assistance of counsel at trial; and (6) prosecutorial misconduct at trial.

3046, 49 L.Ed.2d 1067 (1976); *Caver v. State of Alabama,* 577 F.2d 1188, 1191–92 (5th Cir.1978); *O'Berry v. Wainwright,* 546 F.2d 1204, 1213 (5th Cir.1977). Claims (3), (4), and (6) were dismissed, in accordance with the magistrate's recommendations, for want of merit based upon appellant's state trial record. The district court found, however, that claim (5), asserting ineffective assistance of counsel, could not be resolved on its merits from the state record. An evidentiary hearing was set, and the court in its August 24 order appointed an attorney to represent appellant in that hearing. In a subsequent order, the court indicated that the hearing would comprehend "all claims of ineffective assistance of counsel." [2]

Following some postponements, the evidentiary hearing was finally held on January 25, 1980. Appellant, his common-law wife, mother-in-law, and sister-in-law testified to the effect that, had the women been contacted by appellant's trial attorney, they

would have offered to testify to an alibi. Appellant's trial counsel also testified, and directly contradicted the assertions by appellant's witnesses both that they had not been contacted and that their proferred testimony would have been competent and valuable to appellant's cause at trial. The district court denied appellant's writ petition on February 5, 1980. The court's opinion indicated that it believed that trial counsel had exercised reasonable professional judgment regarding whether to utilize the alleged alibi testimony and whether to pursue a search and seizure question. Appellant noticed appeal, and requested a certificate of probable cause, which the district court denied on March 5, 1980. This Court affirmed the district court's denial of appellant's petition for habeas relief on June 24, 1981. *Hamilton v. Estelle,* 651 F.2d 775 (5th Cir.1981).[3]

On April 16, 1981, appellant, again *pro se,* filed his third state habeas petition in the convicting court.[4] On May 22, 1981,

---

2. The full text of the district court's order of October 31, 1979 is as follows:

"The evidentiary hearing will encompass *all claims of ineffective assistance of counsel.* The court's order filed August 24, 1979, finding a necessity for a hearing did focus upon claims by petitioner of failure by his counsel that were not revealed by the trial record. The court is persuaded that because a hearing is required, that *all claims of ineffective assistance* ought to be explored. This approach reflects a desire to maximize utilization of court time and the recognition that the line between trial and out of trial defaults may break down when the question of prejudice for any pretrial defaults is addressed.

"The petitioner's request to expand the hearing to include Fourth Amendment search and seizure questions is DENIED for the reasons stated in this court's order filed August 24, 1979. *This does not preclude a claim of ineffective assistance of counsel based on a failure of counsel to contest a search and seizure.* That application of the opportunity to litigate standard *Stone v. Powell* is premised upon legally effective counsel ought also to be kept in mind." (Emphasis added.)

3. This Court's opinion recited that "[o]n appeal Hamilton raises only his ineffective assistance of counsel claim. To support this claim, he relies exclusively on his attorney's failure to get in touch with three alibi witnesses and to call them in his defense at trial. He has abandoned

on appeal the five other grounds raised in his federal petition."

4. This petition alleged ten grounds for relief, including: (1) improper pretrial photographic identification (*i.e.,* no counsel present, and suggestive presentation); (2) illegal search and seizure of evidence (*i.e.,* search without warrant and no effective consent); (3) denial of access to petitioner's state trial records; (4) convicting court's charge to the jury contained various theories of the offense; (5) the district attorney abused the grand jury system (including an allegation of a "forged" indictment which "has not and was not presented by a lawfully impaneled grand jury, nor was this case presented to the Grand Jury of Dallas County, Texas in the April Term, 1975," and alleging practices of the Dallas County District Attorney in "the manufacture of" indictments); (6) invalid indictment (including absence of specification of locus of crime, improper and vague use of the word "unlawfully," failure to describe stolen property, failure to list grand jury witnesses, failure to make allegations of ownership of allegedly stolen property, allegation that indictment failed to allege lack of effective consent by victim of alleged crime, failure to specify all elements of the crime, and failure of the district attorney to "officially sign[ ]" the indictment); (7) illegal search (no search warrant); (8) improper admission of an in-court identification of appellant by the alleged victim of the crime; (9) ineffective assistance of counsel at trial; and (10) cruel and

the state court recommended denying the writ application and appellant's request for a hearing. Following response to the court's findings, filed by appellant on June 15, 1981,[5] the Court of Criminal Appeals denied relief without opinion on June 17, 1981.

On January 27, 1982, appellant, acting *pro se*, filed his second federal habeas petition (C.A.–3–82–0118–G), again in the Northern District of Texas. That court dismissed the petition without prejudice, for nonexhaustion of state remedies, on June 14, 1982. Concurrently, on March 10, 1982, appellant filed a *pro se* application in state court (his fourth state petition) in the form of a "Petitioner's Amendment to His Application for the Writ of Habeas Corpus." Reciting that, although no application was presently before that court, but that "an application that this Court has already had the opportunity to hear and determine; said application being denied by this Court," was "before the Northern District Court-Dallas Division," appellant sought habeas relief, alleging four grounds.[6] On September 22, 1982, the convicting court recommended denying the requested hearing and appellant's writ application. The Texas Court of Criminal Appeals denied relief and cited appellant for abuse of writ on November 10, 1982.

On October 13, 1983, having exhausted state remedies, appellant filed his third federal habeas petition. This petition, the subject of the present appeal, alleged the following eleven grounds for relief: (A) conviction obtained under an unconstitutionally vague statute; (B) unconstitutional pretrial photographic identification; (C) denial of access to trial records; (D) lack of effective consent in (illegal) search and subsequent seizure of evidence; (E) trial charge to the jury not based on the indictment, *i.e.*, containing various theories for conviction not contained in the indictment; (F) indictment forged, and lack of real indictment; (G) indictment defective, *i.e.*, fatal defects in allegations (and an indirect allegation that the indictment had not been returned by a grand jury); (H) illegal search, *i.e.*, no search warrant; (I) prejudicial in-court identification improperly admitted into evidence; (J) ineffective assistance of counsel at trial (including pretrial); and (K) ineffective assistance of counsel on appeal of the state conviction. The State moved for dismissal on grounds of abuse of the writ pursuant to Rule 9(b) of the Rules Governing § 2254, 28 U.S.C. foll. § 2254.[7] In response to this Rule 9(b) motion, appellant alleged that he was asserting new grounds for relief, and also asserted a conclusory claim of excusable neglect as to grounds previously unurged.[8] On March 12, 1984,

inhuman punishment while appellant was incarcerated in the Texas Department of Corrections.

5. Appellant submitted an "Answer" to the convicting court's findings, again alleging that the Dallas County District Attorney's office had forged the indictment. This "Answer" was forwarded to the Court of Criminal Appeals, where it was filed on June 29, 1981.

6. These grounds were: (1) The statute under which conviction had been obtained was unconstitutionally vague; (2) the state trial judge should have recused himself from petitioner's previous habeas corpus application, because appellant had at that time a civil suit pending against the judge and others; (3) the indictment was defective because it lacked an allegation of an act done "[r]ecklessly," as allegedly required by the convicting statute; and (4) the indictment was defective, because it was "defective in substance and form," for failure to particularize the term "[f]irearm." On April 23, 1982, appel-

lant filed an "Amended Application for the Writ of Habeas Corpus" with the state convicting court, apparently in anticipation of the dismissal without prejudice of his second federal petition for want of exhaustion of state remedies, and for the first time raised as error the question of ineffective assistance of counsel on appeal of his state conviction.

7. Rule 9(b), 28 U.S.C. foll. § 2254, reads:
"(b) **Successive petitions.** A second or successive petition may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits or, if new and different grounds are alleged, the judge finds that the failure of the petitioner to assert those grounds in a prior petition constituted an abuse of the writ."

8. Appellant alleged as excuses the following:
"It asserts new grounds/ petitioner is not a licensed attorney and in the past has been

following the recommendation of the magistrate to whom the matter had been referred, the district court dismissed appellant's petition for abuse of the writ pursuant to Rule 9(b). On that same day, appellant gave notice of appeal, and sought a certificate of probable cause, which the district court declined to give. On June 18, 1984, a panel of this Court granted a certificate of probable cause and leave to proceed *in forma pauperis*, and appointed counsel for the purposes of this appeal.

## CLAIMS RAISED IN OR BEFORE FIRST FEDERAL HABEAS

■ Appellant concedes that five of the grounds (grounds (D), (G), (H), (I), and (J)) raised in this, his third federal habeas petition, were raised previously in his first federal petition and were decided on the merits.[9]

■ "The purpose of [Rule 9(b)] is to avoid piecemeal litigation, with petitioners advancing claims one at a time." *Rudolph v. Blackburn*, 750 F.2d 302, 305 (5th Cir. 1984) (citations omitted). We have said that the appropriate standard against which to determine abuse of the writ is not whether a successive petitioner intended to bypass an issue at the time of the previous petition, but "whether he withheld it without legal excuse when he filed his earlier petition." *Jones v. Estelle*, 722 F.2d 159, 163 (5th Cir.1983) (en banc), *cert. denied*, — U.S. —, 104 S.Ct. 2356, 80 L.Ed.2d 829 (1984); *see also Daniels v. Blackburn*, 763 F.2d 705 (5th Cir.1985); *Rudolph v.*

*Blackburn*, 750 F.2d at 305. Legal excuse may exist if, after the previous proceeding, there is a change in the law which makes the claim possible or the petitioner first becomes aware or chargeable with knowledge of the asserted facts on which the new claim is based. *See Daniels*, 763 F.2d at 707.

■ Appellant's alleged ground (C)—denial of access to state trial records—was the sole subject of the request presented in appellant's first state habeas application, in which he sought a free copy of his trial record. It is therefore obvious that appellant was aware of this claim at the time of his first federal petition, and that he bypassed this ground for relief by having failed to have raised it in that first federal petition. He has offered no legally cognizable excuse for not having raised the claim previously.

■ Appellant contends that ground (B) (denial of counsel during an alleged improperly suggestive pretrial photographic display) was not previously raised in his 1978 (first) federal petition. The State of Texas claims that this ground was presented in a brief in support of his first federal petition. In his *pro se* "Petitioner's Brief and Answer to the Respondent's Motion to Dismiss and Answer," which he filed in response to the State's motion to dismiss the first federal petition, appellant did clearly allege *both* that the pretrial photographic display was impermissibly suggestive *and* that it was conducted in denial of his Sixth Amendment right to counsel.[10] The record

denied the adequate law libraries and access to the Courts/ petitioner was under a federal court order to exhaust all state remedies before filing into federal court, and did was [*sic*] as ordered by this Court when abuse of the writ was filed against him."

9. Appellant does object that only ground (J) (ineffective assistance of counsel at trial) was previously accorded an evidentiary hearing. The other of these grounds, however, were resolved on the merits from the trial record without a hearing, because there were no disputed material facts. *See, e.g., Townsend v. Sain*, 372 U.S. 293, 312, 83 S.Ct. 745, 756, 9 L.Ed.2d 770 (1963); *Hicks v. Wainwright*, 633 F.2d 1146, 1150 (5th Cir.1981). Our affirmance of the de-

nial of appellant's first federal petition also controls this complaint concerning the limited nature of the evidentiary hearing there. Appellant may not, without legal excuse, omit to raise on appeal claimed errors in the denial of his habeas petition and then seek to relitigate the same questions in a subsequent petition. No legal excuse for such omission is advanced here.

10. "Petitioner's Brief and Answer to the Respondent's Motion to Dismiss and Answer," was filed by appellant, *pro se*, November 9, 1978. The magistrate's findings and recommendations were filed July 31, 1979, and the district court's order for a limited evidentiary hearing was filed on August 24, 1979. In his referenced November 9, 1978 filing, appellant addressed the issue

also reflects that appellant briefed the issue of lack of counsel at the pretrial display (though not expressly the suggestiveness of display claim) in his second state habeas application.[11] This state application

was filed and resolved *before* appellant's first federal petition for relief was filed. Thus, there can be no doubt that appellant was sufficiently aware of the nature and import of all his claims regarding the pre-

of the pretrial photographic identification as follows:

"The State has sought to prove that the pre-trial identification of the accused was legal, but ... a criminal suspect can not be subjected to a pre-trial identification process *in the absence of counsel,* without violating the Sixth Amendment. If he is, the prosecution may not support or buttress a later in-court identification of the witness [sic] by any reference to the previous identification.

"The in-court identification is not admissable [sic] at all unless prosecution can establish by clear and convincing proof that the testimony is not the fruit of an earlier identification in the absence of the accused's counsel, citing *U.S. -v- Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149.

"Petitioner's pictorial line-up was had, and defendnant [sic] was without counsel, and the court will note the following argument and presentation;

"The trial court erred in refusing to exclude the in-court identification testimony of Wesley Waldrop, the lone eye witness, as said testimony was tainted by the impermissably [sic] suggestive pre-trial photographic show up so as to give rise to a very substantial liklihood [sic] of irreparable misidentification." (Emphasis is appellant's.)

Appellant described the trial testimony of the witness and the conducting officer and the pictures which made up the display, and included an allegation, also pursued at the state trial, that the six displayed photographs did not match the description given by Waldrop immediately after the robbery, to the effect that the robber had been a white male with shoulder-length hair and a prominent mustache. Appellant alleged that the six photos included two Mexican-Americans, and that "most of the photos depict individuals with semi-long hair and four of the photos reflected either no mustache or a very light mustache." Appellant went on to state:

"In making the determination as to whether the in-court identification testimony of the lone eyewitness should have been excluded as a matter of law, the trial must first determine if the picture spread is impermissably [sic] suggestive, and if so, whether the picture spread gave rise to a liklihood [sic] of irreparable misidentification. See: *Stoval -v- Denno,* 388 U.S. 293 [87 S.Ct. 1967, 18 L.Ed.2d 1199]; *Simmons -v- United States,* 390 U.S. 377 [88 S.Ct. 967, 19 L.Ed.2d 1247]."

"... Petitioner submits that the picture spread shown to the complainant [sic] in this

case was *impermissably* [sic] suggestive ...." (Emphasis added.)

11. "At this time the petitioner goes to the well picked case of (*Stoval -v- Denno,* 388 U.S. 293 [87 S.Ct. 967, 19 L.Ed.2d 1247]), in which it was stated then that, 'confrontation of accused for I.D. is a critical stage of prosecution and the counsel for defense is a necessity and required at all such confrontations.' Notice also the cases of (*U.S. -v- Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 and *Gilbert -v- California,* 388 U.S. 272, 263 [87 S.Ct. 1951, 1956, 18 L.Ed.2d 1178]). In these the Court stated, '*Wade* and *Gilbert* fashion exclusionary rules to deter law enforcement authorities from exhibiting the accused to the witness before trial for I.D. purposes without notice to counsel for defense and in the absence of counsel. A conviction which rests on mistaken I.D. is a gross miscarriage of justice.' These rules are aimed at minimizing the possibility, by presenting the accused to unfairness of a pretrial identification, that experience has proven can occur, and assuring, that meaningful examination of the plaintiff or witnesses testimony and identification at trial. It was further stated that, 'testimony at guilt innocense [sic] stage of witness, that he I.D. the accused at photographic lineup, which was illegal, in having been conducted without notice to counsel for defense, was per-se inadmissable [sic], and state was not entitled to show any different.' Also note (*Foster -v- California,* 394 U.S. 440 [89 S.Ct. 1127, 22 L.Ed.2d 402], and *Lucas -v- State,* 444 S.W.2d 638, 641). The (6) Sixth and (14) Fourteenth Amendments of the U.S. Constitution has been stated by the court saying, 'A person accused of a crime requires the guiding hand of counsel at every stage of the prosecution against him[']; citing (*Hamilton -v- Alabama,* 368 U.S. 52 [82 S.Ct. 157, 7 L.Ed.2d 114]). The confrontation by cross examination of state's witnesses and no attorney for the petitioner at photo lineup, led to confinement till grand jury indictment. See: (*U.S. -v- King,* CADC– 7/18/73; *Washington -v- Chemmer,* 339 F.2d 715; *Griffin -v- California,* 380 U.S. 609 [85 S.Ct. 1229, 14 L.Ed.2d 106]; *Wilson -v- U.S.,* 149 U.S. 60; [13 S.Ct. 765, 37 L.Ed. 650] and 18 U.S.C.A., sec. 3481 (on 5th Amendment). Petitioner has shown the totality of the circumstances surrounding the identification by a photographic lineup, it being illegal and in violation of rights of this petitioner in accordance to the very laws this country is based on."

trial display before the district court ruled on the first federal petition, so that dismissal of this claim for relief on grounds of abuse of the writ by the district court considering the third federal petition was fully justified.[12]

## OTHER CLAIMS OF APPELLANT REJECTED

■ Appellant's remaining claims, namely, (A) that the Texas statutes under which his conviction is supported are duplicative and therefore unconstitutional; (E) that the convicting court's charge to the jury improperly contained multiple theories; (F) that the indictment was a forgery; and (K) that he received ineffective assistance of counsel on his state conviction appeal, had not been raised in or prior to his first federal habeas. All these claims were also dismissed by the district court on grounds that appellant's failure to raise them in his first federal petition constituted an abuse of the writ under Rule 9(b). Appellant was allowed to file a written response to the State's allegation of abuse of writ, but was granted no evidentiary hearing on the matter.[13] A petitioner must be afforded an opportunity to respond to an allegation of abuse, but a hearing is not required if the court determines that a petitioner "has no chance of justifying the successive peti-

tion." *Jones*, 722 F.2d at 164; *see also Daniels*, 763 F.2d at 707–08.

## The Previous Petition: *Pro Se* or Not *Pro Se* ?

The State urges us to find that this appeal is controlled by our recent en banc opinion in *Jones v. Estelle, supra.* This Court there ruled that a *pro se* petitioner who had filed a successive federal habeas petition, and who had had the benefit of representation by counsel during the course of the prior petition, was to be held constructively to the same standard of knowledge of the law that could be attributed to his counsel, at least if counsel's competency were not successfully challenged in the subsequent federal habeas. *See Daniels*, 763 F.2d at 707.

■ The State characterizes appointed counsel's representation of appellant during the evidentiary hearing in his first federal petition as having been representation for all purposes therein. If so, under *Jones*, appellant's failure to have raised any claims in his first federal petition, the essential facts supporting which were then known to him, would normally be sufficient to bar under Rule 9(b) any attempt to raise such claims in a subsequent petition, notwithstanding the absence during the prior

---

**12.** Appellant also complains that his claims regarding the pretrial display were not adequately addressed by the district court in his first federal habeas. The district court, in its August 24, 1979 order, found no merit in, and denied without an evidentiary hearing, what it characterized as appellant's claim that "[t]he admission of an in-court identification of Hamilton by the robbery victim violated Hamilton's constitutional rights." This would appear to embrace all of Hamilton's complaints about the in-court identification, namely, that it was based on a pretrial display which was faulty as having been both overly suggestive and accomplished without the presence of any counsel for Hamilton, and that the in-court procedures were themselves improperly suggestive. In any event, it is evident that Hamilton was aware of all these claims. If he did not seek relief on the basis of them in his first federal habeas, his failure to do so was without legal excuse. If he did seek relief thereon in that proceeding, then, absent some legal excuse, he was bound to assert that ground in his appeal from the denial of his habeas peti-

tion, rather than to seek to relitigate the same claims in a subsequent petition. No such claims were asserted in the appeal from the denial of the first federal habeas, and no legal excuse for such omission appears.

**13.** In *Vaughan v. Estelle*, 671 F.2d 152 (5th Cir. 1982), this Court indicated that, where a *pro se* habeas petitioner was ignorant of the legal significance of an issue about which he had factual knowledge, his failure to raise the issue in an initial habeas petition might be excusable. But this Court has also held that such a petitioner must allege, and prove by a preponderance of the evidence, satisfactory excuse for failure to raise an issue in a previous habeas. *Daniels v. Blackburn*, 763 F.2d at 707; *Rudolph v. Blackburn*, 750 F.2d at 305; *Jones v. Estelle*, 722 F.2d at 164 & n. 4, 169; *see also Sockwell v. Maggio*, 709 F.2d 341, 344 (5th Cir.1983) (abuse of writ defined in terms of whether petitioner's lack of awareness of or failure to comprehend significance of known facts was excusable or justifiable).

proceeding of actual knowledge on the part of appellant *personally* of the legal significance of those supporting facts.

The question of what standard to apply to a petitioner wholly unrepresented by counsel at any time during the course of the relevant prior petition was not answered by this Court in *Jones*. We said there only that "[w]hen a petitioner was *represented by competent counsel in a fully prosecuted writ* he cannot by testimony of personal ignorance justify the omission of claims when awareness of those claims is chargeable to his competent counsel." *Jones*, 722 F.2d at 167 (emphasis added). We indicated in *Jones* that general principles of equity in Rule 9(b) cases of abuse "boil down to the idea" that such a petitioner may excuse the omission of a claim in a prior federal petition if he proves, for instance, that he did not then know of the previously unraised claim because it has been made possible by a change in the law since the prior writ or by facts not then known or reasonably knowable. *Id.* at 165. But we cautioned also that "[i]t is more difficult when we review the efforts of a pro se petitioner to meet his burden of proving excusable neglect. That difficulty surfaces in pro se cases as a greater tolerance for prisoner compliance with these described rules." *Jones*, 722 F.2d at 165. Our opinion in *Jones* did not question our prior suggestion in *Vaughan v. Estelle*, 671 F.2d 152 (5th Cir.1982), that a *pro se* petitioner's ignorance of the legal significance of facts known to him at the time of an earlier petition might provide an excuse for failure to raise those issues in the prior proceeding. *Id.* at 153 & n. 5.

In opposition to the State's characterization, appellant asserts that counsel was appointed to represent him in his first federal habeas only for the single, narrowly circumscribed issue which was the expressly designated subject of the evidentiary hearing there, namely, appellant's claim of ineffective assistance of trial counsel in his state trial. Appellant thus urges that the question presented here is whether he, as a *pro se* petitioner who had *not* received the benefit of representation by competent counsel throughout the course of his prior federal habeas proceeding, should be held, nonetheless, to the *Jones v. Estelle* constructive knowledge standard in determining whether his failure in that previous proceeding to raise other issues suffices to bar him under Rule 9(b) from raising those issues in this successive petition.

**Implicit Representation by Counsel**

■ Appellant did have the benefit of counsel for at least some part of his prior federal habeas proceeding: Counsel was appointed to represent him at the evidentiary hearing held to consider appellant's claim of inadequate assistance of state trial counsel. It is therefore appropriate that we examine the actual scope of that hearing.

The district court's October 31, 1979 order with respect to that hearing was clear and unequivocal: "The evidentiary hearing will encompass *all claims of ineffective assistance of counsel.*" (Emphasis added.) In the same order, the district court denied a request (presumably by appellant's counsel, who had been appointed several weeks earlier) to expand the evidentiary hearing to include appellant's Fourth Amendment search and seizure claims. Appellant argues that this indicates that the court restricted the scope of counsel's *appointment* to representation on only the narrow single issue of ineffective assistance of counsel at trial, and that the court's refusal to expand the scope of the hearing was tantamount to a refusal to allow counsel to represent appellant as to any other possible issues respecting that first petition. But we note that this search issue had already been decided by the court *on the merits*, and that, in the same breath as it declined to expand the subject matter of the scheduled hearing, the court noted that its refusal to expand the scope of the *hearing* "does not preclude a claim of ineffective assistance of counsel based on a failure of counsel to contest a search and seizure [*i.e.*, at the convicting trial]." There is no admonition by the court that the ineffective assistance inquiry would necessarily be a

narrow one; to the contrary, there is in the court's order an express indication (if not an invitation) that, within the context of examining "all claims of ineffective assistance of counsel," other issues, including even ones which already had been dismissed on their own individual merits, might nonetheless be raised as part of the process of determining whether appellant had received effective assistance of trial counsel. Appellant does not allege, and the record of the first federal habeas does not suggest, that appointed counsel actually was rebuffed by the court upon attempting to raise any issues—other than the search issue which the court had already decided—that lay outside the ostensibly circumscribed contours of the scheduled hearing, including any of the issues which appellant purports to raise for the first time in the present petition. Nor did the district court in any way instruct counsel that he could *not* raise other issues *not already decided on the merits* in some context *other than* that of the scheduled hearing; the court's order recites merely that the *scheduled evidentiary hearing* would encompass only the ineffective assistance of counsel claim.

Moreover, we think that it clearly would be incumbent upon any competent counsel examining a claim of ineffective assistance of trial counsel to have read the state record of trial—and arguably of appeal—in order to search out examples of ways, both specific and cumulative, in which appellant might have been inadequately represented

in the pretrial and trial proceedings. Certain types of potential claims thus should have been considered by counsel, including especially any questions of constitutional dimension presented by the trial record, even in such a narrowly drawn context as this single-issue hearing.

In particular, appellant's present challenge to the penal statute under which he was convicted, on grounds of its alleged unconstitutionality, and his assertion that the jury charge contained multiple theories, are each based on matters appearing on the face of the state trial record which were necessarily obvious to both state trial counsel and to habeas counsel and, to the extent that they might have any validity as grounds for federal habeas relief on their own merits, would likewise constitute a basis for an assertion of ineffective assistance of state trial counsel. Counsel appointed for the hearing on ineffective assistance would have been bound to raise these issues, if they had any merit.[14] Thus, regardless of how limited the representation implicated in the evidentiary hearing in appellant's first federal habeas proceedings may have been, it is inescapable that at the least these issues were precisely the kind which would have been searched for and evaluated, and which, if meritorious, would have been raised by appointed counsel.[15]

Thus, we cannot characterize appellant as a previously wholly *pro se* petitioner.[16]

---

**14.** We note in this context that the statutes which appellant alleges to have been unconstitutional, Tex.Penal Code Ann. §§ 29.01 (definitions), 29.02 (robbery), 29.03 (aggravated robbery), have withstood similar assertions of unconstitutional vagueness. *Honea v. State*, 585 S.W.2d 681 (Tex.Crim.App.1979); *Wells v. State*, 576 S.W.2d 857 (Tex.Crim.App.1979). Appellant's remaining argument that sections 29.02 and 29.03 are duplicative overlooks the fact that section 29.02 is a lesser included offense of section 29.03. These contentions of appellant are meritless on their face.

**15.** A similar conclusion is warranted also respecting the previously considered claim of appellant that the pretrial photographic display was impermissibly suggestive and without counsel. The facts in this respect were brought out at the state trial. This claim, too, is of the kind

necessarily implicated in any ineffective assistance claim. In addition, appellant's *pro se* response to the State's motion to dismiss the first petition expressly recognizes this to be a viable independent ground for relief. This response was part of the record of the petition proceedings prior to the time counsel was appointed for the evidentiary hearing.

**16.** We also note in this context that appointed habeas counsel did more than simply read the record and conduct appellant's case at the hearing. He also performed corollary functions related to the hearing directly, such as answering the State's interrogatories and calling witnesses. In addition, he performed tasks not necessarily required by or consistent with what appellant characterizes as a very circumscribed role: Appointed counsel noticed appellant's appeal from

Under the presumption of constructive attribution announced in *Jones v. Estelle*, we conclude that appellant is properly chargeable with the knowledge of his competent habeas counsel [17] as to all issues necessarily implicated in that counsel's inquiry into appellant's claim of ineffective assistance of trial counsel. These include appellant's present claims that the convicting statute was unconstitutional and that the jury charge was improper, as well as the previously discussed claims concerning the pretrial display. Appellant has, therefore, forgone present consideration of these issues by virtue of not having presented them in his first federal petition.[18]

### The Ineffective Assistance of Appellate Counsel Claim

Appellant's claim of ineffective assistance of counsel on state appeal may present a somewhat different question in this respect. The first federal habeas court's scope-of-hearing order would appear on its face to comprehend such a claim, but appellant in that petition had alleged only ineffectiveness of *trial* counsel. On his direct state appeal, appellant was represented by different counsel than had represented him at trial. We do not know whether appointed counsel at the first federal habeas read and evaluated the briefs filed on direct appeal. We need not consider this question, however, because this asserted ground for relief fails in any event.

An accused is entitled to the effective assistance of counsel on a direct appeal as of right. *Evitts v. Lucey*, ⸺ U.S. ⸺, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). Here appellant's counsel duly perfected the appeal and filed a brief competently asserting error in allowing the victim's in-court identification on the ground that it resulted from an impermissibly suggestive pretrial display and in allowing testimony by third persons of the victim's pretrial identification. These points are addressed in the opinion affirming appellant's conviction. This is not a case, then, where counsel's deficiencies prevented *any* appel-

the adverse result following the evidentiary hearing, sought a certificate of probable cause from the district court, and wrote and filed the appellate brief for that appeal. And while that appeal concerned only the ineffective assistance of counsel claim, we do not find the absence of other grounds for error in the appeal to indicate anything more than that other claims were without merit warranting appeal. Certainly competent counsel would have raised on appeal the question of any improper *restriction* of his representation by the district court, especially had he discovered and attempted to raise any new or additional significant grounds for habeas relief. But no such allegation is anywhere contained in counsel's appeal brief, or elsewhere in the record of this case. In addition, we have examined the state trial and appeal record, and find nothing that would justify raising in the federal habeas proceedings any issues not already raised and disposed of; nor any even arguably close calls respecting the federal district court's disposition of the issues raised that would have warranted an assertion of error regarding that disposition on appeal.

**17.** Appellant does not assert on appeal, nor did he in his third federal petition, that appointed counsel at the prior federal habeas petition proceeding was ineffective.

**18.** We also note a further indication that appellant was aware, prior to his first federal habeas,

of the claims raised in his third federal habeas which we have held are barred by abuse of the writ. In a pleading filed April 23, 1982 in his fourth state habeas proceeding, appellant claimed that his counsel on direct appeal of his state conviction was inadequate because he failed to raise as error certain matters appellant had specifically requested him to raise. Among these purportedly ignored grounds of error were: illegal search and seizure; "no counsel during a critical stage of the prosecution"; multiple theories in the jury charge; "the indictment in this cause is possibly forged"; fatally defective indictment; no warrant for search; ineffective assistance of trial counsel; "the photographic display violated petitioner's right"; and denial of records by appellate counsel. Appellant then recited:

"Now, due to counsel's refusal to file these points of error, all courts who have heard any of petitioner's claim[s] has refused to hear them for not filing them on direct appeal or in motion for new trial, *even though petitioner consistently attempted to have these errors raised by appeal lawyer.*" (Emphasis added.)

If appellant did in fact ask his lawyer to raise these points on the direct appeal of his conviction, then appellant knew at that time of the facts underlying each of these alleged grounds of error and comprehended their independent legal significance before he had filed *any* of his state or federal habeas petitions.

late review, as in *Lucey,* or where there was, by reason of actual conflict of interest or the like, effectively no appellate counsel, or where, similarly, appellate counsel *"entirely* fails to subject the prosecution's case to meaningful adversarial testing." *United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 2047, 80 L.Ed.2d 657 (1984) (emphasis added); *Ricalday v. Procunier,* 736 F.2d 203, 209 n. 6 (5th Cir.1984).

 That being the situation, a claim of ineffective assistance of counsel requires a particularized showing of an identifiable lapse in the performance of the attorney which when viewed under a "highly deferential" standard nevertheless falls "outside the wide range of professionally competent assistance." *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 2065, 2066, 80 L.Ed.2d 674 (1984). This "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* 104 S.Ct. at 2064. *See also Nealy v. Cabana,* 764 F.2d 1173, 1174, 1177 (5th Cir.1985). It is also the accused's burden to establish that the particular lapse was prejudicial, that there is "a reasonable probability" that but for the error the ultimate result would have been different. *Strickland,* 104 S.Ct. at 2068. The accused must "show how specific errors of counsel undermined the reliability of the finding of guilt." *Cronic,* 104 S.Ct. at 2047 n. 26. *See also Nealy v. Cabana, supra.* The ultimate "benchmark" is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland,* 104 S.Ct. at 2064; *Nealy v. Cabana,* at 1177.

 Here appellant points to no identifiable lapse by his state appellate counsel, but merely claims that counsel refused to raise issues that appellant allegedly requested him to raise. However, appellant does not provide any specifics about what those issues might have been. This wholly fails to state a valid claim of ineffective assistance of counsel. "[M]ere conclusory allegations do not raise a constitutional issue in a habeas proceeding." *Ross v. Estelle,* 694 F.2d 1008, 1012 (5th Cir. 1983). Counsel is not ineffective merely because he fails to raise an issue or issues requested by the appellant. *See Winters v. Cook,* 489 F.2d 174, 179–80 (5th Cir.1973).[19] Moreover, our examination of the state trial and appellate record fails to disclose any basis for a valid claim that counsel's omission to raise any issue or issues constituted ineffective assistance.[20] Finally, the state record reflects that the proceedings were fundamentally fair, that their result and the finding of guilt are reliable, and that no breakdown in the adversarial process rendered them otherwise. *See Ricalday,* 736 F.2d at 209 & n. 6.

Appellant's claim of ineffective assistance of counsel on direct appeal is without merit.

## THE FORGED INDICTMENT CLAIM

Having thus rejected all of appellant's other claims, we turn to the one remaining ground for relief asserted in his third federal habeas application, namely, the claim that his state indictment was forged. Appellant alleges in his third federal habeas petition that

"F) The signature of the Foreman of the Grand Jury is forged. Based upon information and belief, petitioner claims that the signature of Harvey Cash, Fore-

---

**19.** Further, appellant's request to his counsel to raise issues surely bespeaks his knowledge of the facts and potential legal significance of the requested claims. Appellant did not assert that he first learned of his counsel's failure to raise these issues on appeal after his first federal habeas proceeding. Hence he did not discharge his burden of proffering a legal excuse for not previously raising this claim.

**20.** We also observe that state trial counsel did not object to the indictment or the jury charge or raise any search and seizure point. The prior proceedings determined that trial counsel did not provide inadequate representation.

man; is forged and is not the signature of said Harvey Cash. If in fact this is correct, petitioner's conviction *is not based on a lawfully and sworn-to indictment*, which is tantamount to Aggravated Kidnapping; and is a bar to all prosecution, in accordance to the Constitution of the United States.

"(G) The indictment of this cause is fundamentally defective.... (8) is possibly forged and *not a presentation of the grand jury.*" (Emphasis added.)

 At oral argument, the State interpreted this claim to raise, not the question of a totally "manufactured" indictment, but only the claim that the indicting grand jury's foreman had failed to personally sign the indictment, impliedly recognizing the possibility that an unidentified third party had signed the foreman's name in his stead. The State cites *McCullough v. State*, 425 S.W.2d 359 (Tex.Crim.App.1968), for the proposition that a grand jury foreman's signature is not essential to the validity of an indictment. However, neither that case nor *Ex parte Landers*, 366 S.W.2d 567 (Tex.Crim.App.1963), which *McCullough* cites as authority for the proposition, nor the case cited in turn in *Landers*, *Ex parte King*, 156 Tex.Cr.R. 231, 240 S.W.2d 777 (1951), involved indictments that were alleged to have been other than properly returned by a duly constituted grand jury. As we read them, *McCullough* and its predecessors properly stand only for the proposition that the mere *absence* of the grand jury foreman's signature on an indictment *otherwise actually properly returned by the grand jury* is not fatal to the indictment's validity.

 Contrary to the State's construction of appellant's claim, we think that appellant has raised the question of whether his indictment was in fact returned by a grand jury, and, if not, whether he was therefore ever properly under the state trial court's jurisdiction.

In the proceedings below, the State did *not* assert that appellant should have previously raised this claim, and, indeed, inferentially admitted otherwise. Due to the very nature of the claim, it is not one of which appellant or any of his lawyers could be expected to have been aware. Appellant did not raise this claim in any forum prior to the dismissal of the first federal habeas. The State, beyond characterizing this claim as being "completely without merit" and "incredible beyond belief," has made no factual allegations by way of rebuttal. Appellant supports his claim with citations to cases which he allegedly discovered only *after* his first federal petition, and which, he asserts, purport to establish that the Dallas District Attorney's office was "manufacturing" fraudulent indictments during the period of time relevant to appellant's indictment.[21]

Moreover, we think that this allegation states grounds for which justice might well require that a federal court reach the merits of the issue, whether or not it were technically subject to dismissal under Rule 9(b), at least in the absence of a much clearer showing than this record affords that the claim was wrongfully withheld

---

**21.** Appellant insists that it is "possible" that the Dallas County District Attorney's office itself manufactured and signed the indictment, and that his resulting prosecution, and his conviction, were therefore based entirely on a fiction having no legal force. As support for his allegation that his indictment was "manufactured," appellant cites several unreported Texas cases, all apparently discovered, and, indeed, some decided, after his first federal petition, in which he claims that the Dallas County District Attorney's office was in fact implicated in the manufacture of fraudulent indictments: *Doyle v. State*, No. F76–1319–NP; *Beasley v. State; Owens v. State; Lewis v. State*, F78–4790–NQ; *Hammonds v. State*, F78–5221–NM, all allegedly arising from the April 1975 term of the Dallas County Grand Jury of which Harvey Cash was foreman, and all from the state district courts in Dallas County; from Judicial District Court No. 5 of Dallas County, Texas, 1980 term: *Texas v. Michael Wayne Thomas*, No's F80–7461–LJ, F80–7655–LJ, F80–7582–LJ, and F80–7778–LJ; from Court No. 203 of Dallas County, *Thomas v. State*, F81–1870–PJ, F81–1871–PJ, F81–1872–PJ, and F81–1873–PJ; and from Court No. 2, Dallas County, *Thomas v. State*, F81–10187–IT.

from the first federal habeas.[22] *Jones v. Estelle*, 722 F.2d at 165; *Sanders v. United States*, 373 U.S. 1, 18–19, 83 S.Ct. 1068, 1078–79, 10 L.Ed.2d 148 (1982). We therefore reverse the district court's summary dismissal of this alleged ground for relief, and remand for further consideration of this issue.

 We point out that there is no federal constitutional right to an indictment before trial in a state criminal action. *Hurtado v. California*, 110 U.S. 516, 4 S.Ct. 111, 28 L.Ed. 232 (1884); *see also Alexander v. Louisiana*, 405 U.S. 625, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972); *Liner v. Phelps*, 731 F.2d 1201, 1203–04 (5th Cir. 1984). In this Circuit, the sufficiency of a state indictment is not ordinarily a matter for federal habeas relief unless the indictment is shown to be so fundamentally defective as to have deprived the convicting court of jurisdiction to try the cause. *Liner v. Phelps*, 731 F.2d at 1203; *Branch v. Estelle*, 631 F.2d 1229, 1233 (5th Cir.1980). As we indicated in *Liner*, federal habeas

relief may "be invoked with respect to the sufficiency of an indictment only when the indictment is so fatally defective that under no circumstances could a valid conviction result from facts provable under the indictment, *and* that such a determination 'can be made *only* by looking to the law of the state where the indictment was issued.' *Johnson v. Estelle*, 704 F.2d 232, 236 (5th Cir.1983) (emphasis added)." 731 F.2d at 1203 (emphasis in original).

The *Texas* Constitution generally requires a grand jury indictment for all felony prosecutions.[23] So it is at least arguable, in the absence of case law or statutory authority to the contrary, that Texas courts would reach the conclusion that a wholly forged indictment does not confer criminal jurisdiction to the state trial court so that the "conviction" would be void. *Cf. Hollingsworth v. State*, 87 Tex.Cr.R. 248, 221 S.W. 978 (1920); *King v. State*, 473 S.W.2d 43, 48 & n. 11, 52 (Tex.Crim.App.1971). As noted, neither party has furnished us with any authority in point on this issue.[24]

**22.** Accordingly, the collateral indication (*see* note 18, *supra* ) that appellant was earlier aware that the indictment was "possibly forged" is not, in the present posture of this case, a sufficient basis for abuse of the writ dismissal. We do not intend to necessarily preclude such a dismissal on a more adequate showing. However, as previously noted, abuse of the writ was not urged by the State below as to this ground, so appellant was not called on to explain. It is not necessarily inconceivable that, particularly with regard to a claim such as this, later information transformed what were at first mere suspicions into a more substantial claim.

**23.** The Texas Constitution sets out the following "Rights of accused in criminal prosecutions": "*In all criminal prosecutions* the accused shall have a speedy public trial by an impartial jury. He shall have the *right* to demand the nature and cause of the accusation against him, and to have a copy thereof.... [A]nd *no person shall be held to answer for a criminal offense, unless on an indictment of a grand jury*, except in cases in which the punishment is by fine or imprisonment, otherwise than in the penitentiary, ...." Tex.Const. art. I, § 10 (emphasis added).

**24.** The state court denial of post-conviction relief on this ground did not address the legal merits of the claim, but rather apparently determined, without any evidentiary hearing, that appellant's allegations would not overcome the

presumption of regularity. Thus, in recommending (to the Court of Criminal Appeals) denial of appellant's third state habeas petition in which the forged indictment claim was presented as the fifth ground for relief (*see* note 4, *supra* ), the state trial court observed:

"With respect to Petitioner's Fifth (5th) contention, it is the well established rule of law that the records in a cause will be presumed to be regular in absence of direct proof to the contrary, and Petitioner's mere allegations to the contrary are not direct evidence to the contrary. *Harvey v. State*, 485 SW2d 907 (Tex.Crim.App.1972). The records indicate the signature of the foreman of the Grand Jury, Harvey Cash, on the indictment presented by the Grand Jury, and the indictment must be presumed to be regular in absence of direct proof to the contrary—Petitioner's mere allegations to the contrary are not sufficient to rebut the presumption. *Harvey v. State, supra*."

The cited *Harvey* case does not deal with indictments or charging instruments.

We do not reach the issue of whether state conviction on a wholly "manufactured" indictment, where state law requires the prosecution to be by indictment and the accused and his counsel are unaware of the defect, would constitute a violation of due process under the Fourteenth Amendment even if it did not render the conviction subject to collateral attack under

On remand, the district court therefore ought at least consider additional pleadings, so that it might perhaps dispose of this claim on the basis of a summary judgment; if necessary, it should develop an adequate factual record by appropriate means, including, if warranted, an evidentiary hearing. *Cf. Guice v. Fortenberry,* 661 F.2d 496, 500 (5th Cir.1981). At such a hearing, the burden of proof would, of course, be on appellant.

## CONCLUSION

We sustain the district court's dismissal of all claimed grounds for relief asserted in appellant's petition except the claim that the indictment on which he was prosecuted was forged. As to this one claim only, we reverse the district court and direct further proceedings in conformity herewith.

Accordingly, the judgment is AFFIRMED in part and REVERSED in part, and the cause is REMANDED to the district court for further proceedings consistent herewith.

state law. We are reluctant to reach such a constitutional issue in a factual vacuum, when state law or factual development may well render decision of the point unnecessary to the ultimate disposition of the case.