**David Jon LINER, Petitioner-Appellant,**

v.

**C. Paul PHELPS, Secretary, Department of Corrections and William J. Guste, Jr., Attorney General of the State of Louisiana, Respondents-Appellees.**

No. 83–3128.

United States Court of Appeals, Fifth Circuit.

May 14, 1984.

McElroy & Ramsey, Ltd., Allen A. McElroy, Jr., Berwick, La., Arthur A. Lemann, III, New Orleans, La., for petitioner-appellant.

Rene I. Salomon, Asst. Atty. Gen., Baton Rouge, La., for respondents-appellees.

Before REAVLEY and GARWOOD, Circuit Judges *.

GARWOOD, Circuit Judge:

This is an appeal from the judgment of the district court denying appellant's petition for a writ of habeas corpus in which he challenged the validity of his Louisiana conviction for first degree murder. Appellant's challenge is predicated solely on the alleged defectiveness of the wording of the indictment on which he was prosecuted. Appellant was indicted in September 1978. The indictment charged him with having on May 20, 1978, in St. Mary Parish, Louisiana, "committed first degree murder of Roxanna Barrilleaux; contrary to the provisions of R.S. 14:30 of the State of Louisiana—FIRST DEGREE MURDER." Appellant's counsel filed in the state proceedings a motion to quash based on an asserted substantial defect in the grand jury's indictment, claiming that the grand jury had failed to specify which aggravating circumstance qualified the crime as first degree murder. At the time of the offense, the elements of first degree murder in Louisiana included a specific intent to kill and the presence of an aggravating circumstance.[1] The state trial court quashed the indictment and refused to allow the prosecutor to add, over defense objections, the aggravating circumstance relied on (that the murder had occurred "during the commission of attempted Aggravated Rape") by amendment without resubmission to the grand jury.

The state then applied for a writ of review to the Louisiana Supreme Court. The Louisiana Supreme Court reversed the trial court's ruling quashing the indictment, stating that the indictment was not defective since it conformed to the Louisiana Code of Criminal Procedure, article 465, which allowed this character of short form indictment for first degree murder. *State v. Liner*, 373 So.2d 121 (La.1979).[2] At a subsequent trial, appellant was found guilty as charged for first degree murder, and was sentenced to serve life imprisonment without the benefit of probation, parole, or suspension of sentence.[3] The con-

---

* This appeal is determined by a quorum of the three-judge panel to which it was regularly assigned, as one of the judges of the panel recused himself following the calendaring of the case for oral argument to the panel. *See* 28 U.S.C. § 46(d).

1. At the time the crime in question was committed on May 20, 1978, first degree murder was defined by LSA–R.S. 14:30 as follows:

   "First degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm."

   LSA–R.S. 14:30.1 defined second degree murder, however, as:

   "The killing of a human being when the offender has a specific intent to kill, under circumstances that would be first degree murder under Article 30, but the killing is accomplished without any of the aggravating circumstances listed in Article 905.4 of the Louisiana Code of Criminal Procedure."

   The Louisiana Supreme Court had interpreted these provisions to define first degree murder as a specific intent homicide accomplished with a statutorily prescribed aggravating circumstance. *State v. Payton*, 361 So.2d 866 (La.1978).

2. Article 465 of the Louisiana Code of Criminal Procedure provides in part:

   "A. The following forms of charging offenses may be used, but any other forms authorized by this title may also be used:

   "....

   "31. First Degree Murder—A. B. committed first degree murder of C. D."

   The Louisiana Supreme Court also stated: "Defendant was, of course, entitled to notice of the aggravating circumstance upon which the state would rely to establish the offense. *See,* La. Const., 1974, Art. I § 13. However, the recital of the details of the offense is more properly reserved to a bill of particulars." 373 So.2d 121 at 123. The court further held, without discussion, that the trial court did not err in denying the state's request to amend the indictment. *Id.* The Louisiana Constitution requires that all offenses punishable by death or life imprisonment, including first and second degree murder, be prosecuted on grand jury indictment; all other felonies may be prosecuted by information. La. Const., 1974, Art. I. § 15. *State v. Green*, 390 So.2d 1253, 1260 (La.1980); *State v. Qualls*, 353 So.2d 978 (La.1977).

3. Under Louisiana law applicable at the time, second degree murder authorized a sentence of life imprisonment, without eligibility for parole, probation, or suspension "for a period of forty years." First degree murder authorized a sentence of death or life imprisonment without benefit of parole, probation, or suspension unqualified by the "for a period of forty years" provision applicable to second degree murder. *See* LSA–R.S. 14:30, 14:30.1.

viction was appealed to the Louisiana Supreme Court, and both the conviction and sentence were affirmed. *State v. Liner*, 397 So.2d 506 (La.1981).

The sole issue presented by this appeal is whether appellant was denied due process of law by his conviction based upon a short form indictment authorized by the Louisiana Code of Criminal Procedure, when that indictment did not particularly recite each essential element of the crime, specifically, the aggravating circumstance required for first degree murder under Louisiana law. Appellant admits that he had adequate notice of the referenced aggravating circumstance relied upon by the state through the full bill of particulars timely furnished to him in advance of trial, and that the jury which convicted him was adequately instructed in this regard. He nevertheless contends that the use of the short form indictment subjected him to a meaningless and arbitrary accusatory process. Finding that appellant was not denied due process of law, however, we affirm the judgment of the United States District Court denying appellant's application for writ of habeas corpus.

■ "It is settled in this Circuit that the sufficiency of a state indictment is not a matter for federal habeas corpus relief unless it can be shown that the indictment is so defective that the convicting court had no jurisdiction." *Branch v. Estelle*, 631 F.2d 1229, 1233 (5th Cir.1980). *See also Meyer v. Estelle*, 621 F.2d 769, 771 (5th Cir.1980); *Murphy v. Beto*, 416 F.2d 98, 100 (5th Cir.1969). This Court has also observed that habeas corpus can be invoked with respect to the sufficiency of an indictment only when the indictment is so fatally defective that under no circumstances could a valid conviction result from facts provable under the indictment, *and* that such a determination "can be made *only* by looking to the law of the state where the indictment was issued." *Johnson v. Estelle*, 704 F.2d 232, 236 (5th Cir.1983) (emphasis added). Specifically, the conclusion as to whether a state trial court was deprived of jurisdiction by a fatally defective indictment is a question foreclosed to a federal habeas court "[w]hen it appears ... that the sufficiency of the indictment was squarely presented to the highest court of the state on appeal, and that court held that the trial court had jurisdiction over the case." *Murphy v. Beto*, 416 F.2d 98, 100 (5th Cir.1969). *See also Bueno v. Beto*, 458 F.2d 457, 459 (5th Cir.), *cert. denied*, 409 U.S. 884, 93 S.Ct. 176, 34 L.Ed.2d 140 (1972); *Lowery v. Estelle*, 696 F.2d 333, 337 (5th Cir.1983) ("... the predicate conclusion of no jurisdiction derives *wholly* from state law controlling the validity of Texas indictments." (Emphasis added.)).

■ In *State v. Liner*, 373 So.2d 121 (La.1979), the Louisiana Supreme Court considered the indictment at issue in the present case and specifically upheld its sufficiency. *Id.* at 123. The court found that the short form indictment authorized by article 465 of the Louisiana Code of Criminal Procedure complied with appellant's right under the Louisiana Constitution to be charged by a grand jury indictment. *Id.* While finding that appellant was entitled to notice of the aggravating circumstance upon which the state would rely to prove the offense, the court found that such notice was more properly reserved to a bill of particulars. *Id.* Given, then, that the issue of the indictment's sufficiency was squarely presented to the Louisiana Supreme Court and it was found sufficient, the holdings of *Murphy* and *Bueno* preclude federal habeas corpus relief.

■ Appellant attempts to distinguish these cases by arguing that the short form indictment's failure to specify an essential element of the crime denied him a probable cause determination by a neutral body as to whether there was sufficient evidence to support his indictment for first degree murder. He therefore urges that he was denied due process of law. We reject this argument.

The Supreme Court has held consistently since *Hurtado v. California*, 110 U.S. 516, 4 S.Ct. 111, 28 L.Ed. 232 (1884), that there is no federal constitutional right to a grand jury in state prosecutions. *See, e.g., Alex-*

*ander v. Louisiana,* 405 U.S. 625, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972); *Beck v. Washington,* 369 U.S. 541, 545, 82 S.Ct. 955, 957, 8 L.Ed.2d 98 (1962); *Lem Woon v. Oregon,* 229 U.S. 586, 33 S.Ct. 783, 57 L.Ed. 1340 (1933); *Gaines v. Washington,* 277 U.S. 81, 48 S.Ct. 468, 72 L.Ed. 793 (1928). *See also Henderson v. Cronvich,* 402 F.2d 763 (5th Cir.1968) (Louisiana prosecution of "infamous crime" by information rather than indictment does not violate United States Constitution). While acknowledging the continued vitality of *Hurtado,* appellant, nevertheless, argues that once a state adopts the grand jury as its accusatory body, it must "hew to federal constitutional criteria." *Alexander,* 405 U.S. at 636, 92 S.Ct. at 1228 (Douglas, J., concurring) (quoting *Carter v. Jury Commission,* 396 U.S. 320, 330, 90 S.Ct. 518, 523, 24 L.Ed.2d 549 (1970)).[4] A majority of the Supreme Court in *Alexander,* however, declined to accept this contention and observed instead that "the Court has never held that federal concepts of a 'grand jury,' binding on the federal courts under the Fifth Amendment, are obligatory for the States." 405 U.S. at 633, 92 S.Ct. at 1226. *See also Watson v. Jago,* 558 F.2d 330 (6th Cir.1977) ("[E]ven if a state adopts a grand jury system, federal constitutional requirements, binding in federal criminal cases are not binding on the states ... except with respect to the racial or national composition of grand juries." (Citations and footnote omitted.)).

Appellant was indicted in accordance with the statutorily prescribed form. His complaint that the use of Louisiana's short form indictment has subjected him to a meaningless and standardless accusatory process because it is not possible to determine whether the grand jury considered whether an aggravating circumstance was present before returning his indictment is, therefore, essentially an assault upon the practice of prosecution by information. Appellant urges that this Court cannot determine whether there was a neutrally made probable cause determination as to the presence of an aggravating circumstance. But appellant is not entitled to be free of prosecution absent such a determination so made. "[A] judicial hearing is not prerequisite to prosecution by information." *Gerstein v. Pugh,* 420 U.S. 103, 119, 95 S.Ct. 854, 865, 43 L.Ed.2d 54 (1975).[5] *See also United States v. Millican,* 600 F.2d 273, 276 (5th Cir.1979), *cert. denied,* 445 U.S. 915, 100 S.Ct. 1274, 63 L.Ed.2d 598 (1980).[6] Since we find appellant's only asserted basis for federal habeas relief to be without merit, we therefore affirm the decision of the district court denying him relief.

AFFIRMED.

---

4. *Carter* concerned a charge of allegedly discriminatory selection of membership in state grand juries, and there the Court held that "[o]nce the state chooses to provide grand and petit juries, whether or not constitutionally required to do so, it must hew to federal constitutional criteria in ensuring that the selection of membership is free of racial bias." 396 U.S. at 330, 90 S.Ct. at 523 (footnotes omitted). *Carter,* thus, does not stand for the proposition that once a state adopts a grand jury it must "hew to federal constitutional criteria" in an omnibus sense, but only in regard to racially (or perhaps other similar) discriminatory selection of grand jury members. The majority in *Alexander* justified this distinction in terms of "[t]he strong constitutional and statutory policy against racial discrimination." 405 U.S. at 633, 92 S.Ct. at 1226.

5. We observe that appellant has made no challenge to any pretrial confinement he may have undergone. Moreover, it would appear that the indictment, which appellant in effect conceded was adequate for second degree murder, would have constituted a sufficient neutral probable cause determination for purposes of pretrial confinement.

6. We also note that appellant's argument is somewhat strained since there is no indication that the grand jury did not consider the referenced aggravating circumstance in returning its indictment. If appellant's contention were allowed it is difficult to see why prisoners could not challenge on habeas corpus the sufficiency of the evidence submitted to the grand jury or what the grand jury was told they had to find in order to return an indictment.