**Ronnie CONNER Petitioner**

v.

**S.W. PUCKETT, Commissioner, Mississippi Department of Corrections and the Attorney General for the State of Mississippi Respondents**

**No. CIV.A. 4:97–CV–17WS.**

United States District Court, S.D. Mississippi, Eastern Division.

July 26, 2001.

James L. Henley, Jr., James L. Henley, Attorney, Cynthia A. Stewart, Cynthia A. Stewart, Attorney, Jackson, MS, for Petitioner.

Marvin L. White, Jr., Office of the Attorney General, Jackson, MS, for Respondents.

### MEMORANDUM OPINION AND ORDER

WINGATE, District Judge.

Before the court is the second motion of Ronnie Conner for reconsideration of this court's Memorandum Opinion and Order of

March 31, 2000, by which this court denied the petitioner's request for habeas corpus relief. On December 14, 2000, this court denied Conner's first motion to reconsider and entered a final judgment on January 19, 2001.

Conner submits this second motion to reconsider pursuant to a "recent" ruling of the United States Court of Appeals for the Fifth Circuit in the case of *Lockett v. Anderson*, 230 F.3d 695 (5th Cir.2000). The United States Supreme Court denied certiorari in the *Lockett* case in June of 1995, *Lockett v. Mississippi*, 515 U.S. 1150, 115 S.Ct. 2595, 132 L.Ed.2d 842 (1995). Lockett then sought habeas corpus relief in the federal courts. Eventually, on October 13, 2000, the United States Court of Appeals for the Fifth Circuit granted in part Lockett's request for habeas corpus relief. It is this ruling to which Conner addresses his second motion for reconsideration, now reported as *Lockett v. Anderson*, 230 F.3d 695 (5th Cir.2000).

Conner's argument reurges his previous contention that defense counsel devoted all his energy to the guilt phase of Conner's trial and, consequently, was not prepared for the sentencing phase of the trial. Particularly, Conner repeats his prior argument that his counsel failed to investigate mitigating evidence concerning Conner's alleged psychological problems.

Also before the court is Conner's motion of June 11, 2001, asking this court to permit him to submit a new or amended petition. Conner filed this motion almost five months after this court's Final Judgment had been entered. This motion to amend has as an attachment a new petition which is styled as an amended petition. The first new issue raised by the proposed amended petition is based on the United States Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). In *Apprendi*, the United States Supreme Court overturned a New Jersey sentencing scheme that allowed a state judge, by a preponderance of the evidence, to enhance a defendant's penalty *beyond the prescribed statutory maximum sentence* if the defendant had "acted with a purpose to intimidate an individual or group of individuals because of race, color, gender, handicap, religion, sexual orientation or ethnicity." According to Conner, the ruling in *Apprendi* "is likely to be made retroactive to cases on collateral review by the United States Supreme Court." If so, Conner says that *Apprendi* will have a significant bearing on the instant case because his indictment failed to charge him properly with the essential elements of capital murder under Mississippi law. A conviction for capital murder, says Conner, requires not only proof of murder beyond a reasonable doubt, but also proof of the underlying felony beyond a reasonable doubt. The jury, says Conner, did not find the underlying felonies of kidnaping and robbery by the standard of proof required in order to justify finding Conner guilty of capital murder.

Next, Conner submits that his petition should be amended (or a new petition submitted) on the basis of the recent grant of certiorari by the United States Supreme Court in *McCarver v. North Carolina*, 532 U.S. 941, 121 S.Ct. 1401, 149 L.Ed.2d 344 (2001), a case questioning whether the Eighth Amendment of the United States Constitution permits execution of persons who are mentally retarded.

Conner also submits that his petition should be amended in light of the certiorari granted in *McCarver* because of the recent decision of the United States Supreme Court in *Penry v. Johnson*, 532 U.S. 782, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001), where the Court found that the mitigating circumstances instructions given to a jury by a Texas court failed to

provide the jury with an adequate vehicle to give effect to mitigating circumstances of mental retardation and childhood abuse as required by the Eighth and Fourteenth Amendments of the United States Constitution.[1] Conner contends that *McCarver* and *Penry* apply to his case because his ability to act with any requisite intent to commit the crime with which he was charged was not adequately considered by the jury that sentenced him.

## THE LOCKETT DECISION

### A. The Court's Findings and the Relevant Facts

In *Lockett* the Fifth Circuit reversed in part a Mississippi federal district court's Order granting habeas relief as to the petitioner's two murder convictions and death sentences, holding that the petitioner's indictments sufficiently alleged the essential elements of the crime of capital murder. The Fifth Circuit also relied on the Mississippi Supreme Court's pronouncement that any failing of the indictments was not jurisdictional. *Lockett*, 230 F.3d at 705–706. The federal district court's ruling had held that the indictments against Lockett were fatally defective as a matter of state law for failure to state with specificity the underlying crime upon which the capital murders were predicated (the elements of burglary). The Fifth Circuit concluded that the federal district court erroneously had vacated Lockett's murder convictions and sentences on the basis of the Mississippi Supreme Court's decision in case of *State v. Berryhill*, 703 So.2d 250 (Miss.1997), issued nine years after Lockett's trial, and by applying it retroactively, when the Ber-

ryhill indictment gave no notice of an underlying felony. Lockett's case was materially distinguishable from Berryhill's, said the Fifth Circuit, because Lockett's indictment notified Lockett that he would be prosecuted for burglary based on his intent to steal and his intent to commit violence in so doing.

After ruling that habeas corpus relief had been granted improperly by the district court, the Fifth Circuit then found a basis for granting Lockett habeas corpus relief from his second conviction and sentence when it concluded that counsel was deficient for having failed to investigate the sources for mitigation evidence for the sentencing phase of Lockett's second trial. This finding is the basis of Conner's reliance on *Lockett* in the instant case.

The Fifth Circuit noted that the only effort to explore Lockett's mental problems prior to the district court's evidentiary hearing had been initiated by his mother when she had engaged a psychiatrist to examine him. The state habeas corpus record, said the Fifth Circuit, contained substantial medical expert testimony supporting a conclusion that Lockett had suffered a personality disorder and a brain abnormality associated with a documented history of seizures, and that he had displayed delusional behavior. The Fifth Circuit referred to evidence presented during the evidentiary hearing conducted by the district court showing that Lockett, after he was arrested, began referring to himself as "Bradley Armstrong" and as a teenager. At the time of his confession, said the Court, Lockett claimed to have been having an affair with one of his victims.

---

1. The Supreme Court said that Texas ignored its suggestion that its concerns would have been alleviated by a jury instruction defining the term "deliberately" in the first special issue "in a way that would clearly direct the jury to consider fully Penry's mitigating evidence as it bore on his personal culpability."

"The trial court," said the Supreme Court, "surely could have drafted an instruction to this effect. Indeed, Penry offered two definitions of 'deliberately' that the trial court refused to give." *See Penry v. Johnson*, 121 S.Ct. at 1923–24.

Of particular relevance, said the Court, was expert testimony that Lockett suffered from seizures, testimony which supported the expert's opinion that Lockett's seizures may have resulted from temporal lobe epilepsy, caused either organically, or as a result of repeated falls as a youth. According to one expert, temporal lobe damage would explain Lockett's senseless acts of violence and any eccentric interpretation of reality. Another expert, noted the Court, offered a diagnosis of paranoid schizophrenia; and yet another testified that Lockett suffered from a temporal lobe lesion which could have cause violent behavior. Even the state's medical experts, said the Fifth Circuit, admitted that Lockett had psychological problems, a below average IQ, and that tests Lockett had undergone suggested substance abuse problems with paranoid (and other) personality difficulties.

The Fifth Circuit concluded that Lockett's counsel "did little work in investigating possible bases for a *sentencing* defense for Lockett (emphasis the Court's)." *Lockett*, 230 F.3d at 711. The Court referred to an affidavit presented by defense counsel which stated that, "[b]ecause of my mother's illness and hospitalization and my unexpected appointment to represent two other capital murder defendants while trying to prepare for Carl's (Lockett's) two trials, I was simply unable to devote time to investigating the facts and witnesses involved in Carl's case as much as I would have liked to." *Id.* The Court additionally quoted the testimony of Lockett's mother who said that defense counsel "never approached me to testify at Carl's trials but I asked him if I could testify. Mr. Townsend asked me what I wanted to say and I told him that I just wanted to say something on Carl's behalf and ask the jury for mercy. Mr. Townsend said that I could do that, but he never really discussed my testimony with me or suggested anything else for me to testify about. He never

explained to me [the] kind of evidence that would be useful at the sentencing phase of Carl's trial or asked me questions about what kind of person Carl was." *Id.*, at 711–12. Then, there was the testimony of Lockett himself who said that his attorney "only met me twice in the entire time while he was preparing my cases for trial. The first of these meetings lasted only fifteen minutes and the second one lasted for half an hour. Mr. Townsend never asked me about my childhood .... Mr. Townsend never explained to me what kind of evidence was needed at the sentencing hearing. Mr. Townsend asked me where my blackouts came from and I told him that I was hit on the head when I was younger. Mr. Townsend never asked any more questions about the subject." *Id.* at 712.

The Fifth Circuit referred to the affidavit of an experienced death penalty investigator which was presented at the evidentiary hearing and stated that "[a] thorough case and mitigation investigation was not performed at the time of Mr. Lockett's trial." The investigator concluded that counsel's inquiry into Lockett's psychological condition had fallen below the minimum investigation recommended by the American Bar Association. The investigator observed, for instance, that counsel had no notes of the results of any investigatory work with respect to sentencing, and demonstrated a basic lack of familiarity with the psychological tests that were performed on Lockett, notwithstanding that counsel had notice of possible psychological problems suffered by Lockett and Lockett's head injuries.

In summary, Lockett's attorney performed virtually no investigation of Lockett's psychological or other mental problems which might have produced mitigating evidence to be presented during the sentencing phase of Lockett's second capital murder trial. The Fifth

Circuit ultimately rejected the State of Mississippi's argument that counsel's failure to investigate was a strategic decision, concluding as follows:

> counsel's failure to investigate was deficient; it was not an exercise of informed strategic choice. Although he possessed information that plainly suggested the need to investigate Lockett's psychological problems, he did not, to any degree, pursue this information. A reasonably effective defense counsel would have pursued this information. It is also undisputed that there was ample evidence of childhood trauma at home that should have been pursued. In sum, there was enough information before counsel—repeated head injuries, black-outs, delusional stories, references to self as another name, family troubles, drug and/or alcohol addiction—to put him on notice that pursuit of the basic leads that were before him may have led to medical evidence that Lockett had mental and psychological abnormalities that seriously affected his ability to control his behavior. Counsel thus may have had a strong predicate from which to argue to the jury that Lockett was rendered less morally culpable for the ruthless, cruel, and senseless murders he had committed. The state argues, however, that these alleged failings of counsel to investigate do not constitute ineffectiveness but instead are strategy choices. *Strickland*,[2] however, demands more than the mere decision of a strategic choice by counsel. It requires "informed strategic choices." *Id.* Essential to the rendition of constitutionally adequate assistance in either phase is a reasonably substantial, independent investigation into the circumstances and the law from which potential defenses may be derived. *Baldwin v. Maggio*, 704 F.2d 1325, 1332–33 (5th Cir.1983). Indeed, "*Strickland* does not require us to defer to decisions that are uninformed by an adequate investigation into the controlling facts and law." *United States v. Drones*, 218 F.3d 496, 500 (5th Cir.2000). *See also Baxter v. Thomas*, 45 F.3d 1501, 1514 (11th Cir.1995) ("An attorney's decision to limit his investigation, however, must 'flow from an informed judgment.'" "[O]ur case law rejects the notion that a "strategic" decision can be reasonable when the attorney has failed to investigate his options and make a reasonable choice among them'") (citations omitted.); *Mapes v. Coyle*, 171 F.3d 408, 426 (6th Cir.1999) ("[W]hen a client faces the prospect of being put to death unless counsel obtains and presents something in mitigation, minimal standards require some investigation."). . . . Lockett points to the fact that trial counsel failed to discover Lockett's brain abnormalities because he failed to perform the medical tests recommended by the psychiatrist retained. Given this, Lockett argues that counsel's "strategic decision" was neither reasonable nor informed. We agree. This information and the opportunity to weigh this evidence was never before counsel. Consequently, the record will not support the district court's conclusion that counsel could have made an informed strategic choice not to present mitigation evidence at Lockett's sentencing phase. Furthermore, the state's arguments that Lockett's counsel made a strategic choice either to avoid devastating cross-examination or to prevent the jury from hearing of Lockett's delusions concerning Mrs. Calhoun, are unconvincing because counsel never weighed this

---

**2.** The Fifth Circuit's reference is to the two-prong test set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), i.e., deficient performance and prejudice.

possibility of prejudice against any of the mitigating evidence we have noted above. In sum, the assertion of a "strategic decision" must be rejected because no informed decision was made. *See, e.g., Rector v. Johnson*, 120 F.3d 551, 564 (5th Cir.1997).

*Lockett v. Anderson*, 230 F.3d at 714–15.

## B. Applying Lockett to the Instant Case

█ The question for this court to consider is whether, pursuant to *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), counsel's performance on Conner's behalf was deficient and, if so, was counsel's deficient performance prejudicial to Conner's case, particularly to his sentencing defense. In light of the Fifth Circuit's decision in *Lockett*, an attorney's decision to forego the investigation in a capital trial of possible mitigating evidence pertaining a client's mental condition may constitute deficient performance if it is not informed and based on adequate data which would inform the attorney of his available options. According to the *Lockett* rationale, the Fifth Circuit will not accept the "strategic decision" argument where an attorney had notice of a client's psychological problems and wholly failed to pursue any information regarding those problems. *See Lockett*, at 714.

In his arguments submitted to this court in support of his initial request for federal habeas corpus relief and in his first motion for reconsideration, Conner contended that he had been deprived of the right to a fair trial guaranteed under the Sixth Amendment of the United States Constitution because his attorney had failed to conduct an investigation for mitigating evidence, or evidence of Conner's psychological problems for presentation at the sentencing phase of Conner's trial. Specifically, Conner argued that his trial counsel had failed to present medical testimony of Dr. W.M. Wood of Weems Community Mental Health Center in Meridian, Mississippi, who, according to Conner, could have offered testimony of Conner's mental illness. Additionally, says Conner, social workers at Weems Community Mental Health Center could have offered testimony regarding Conner's mental condition. Conner also noted that he had participated in a detoxification program at the Riley Memorial Hospital in Meridian, Mississippi, and argued that this, too, should have been made known to the jury.

Previously, in this court opinions on Conner's request for habeas relief and the first motion for reconsideration, this court reviewed the Mississippi Supreme Court's decision in *Conner v. State*, 684 So.2d 608 (Miss.1996), and rejected Conner's contention that mitigating evidence concerning his mental health and/or psychological problems had been ignored by his trial counsel. This court relied on the Mississippi Supreme Court's observations concerning the several contexts in which the issue of Conner's mental health and low intelligence had been addressed throughout the course of his trial. *Id.* at 611. Citing an evaluation which had been performed in response to Conner's motion for a mental examination, the Mississippi Supreme Court noted that:

Conner raised the matter in charging that the circuit court erred in not ordering a competency hearing; that his sentence was disproportionate; that important mitigating evidence was excluded; and that the circuit court erred in denying his motion to compel disclosure of information regarding both aggravating and mitigating circumstances. *Conner*, 632 So.2d at 1247–51, 1265, 1267, 1275. Conner was evaluated at Whitfield State Hospital in March, 1990, by order of the circuit court. In relevant part, the evaluation stated that:

The staff was unanimous in the opinion that he is competent to stand trial at the present time. He appears to have a rational as well as factual understanding of the charges against him and he appears capable of assisting his attorney in preparing a defense. With regard to his sanity at the time of the crime, the staff was unanimous in the opinion that he knew the difference between right and wrong in relation to his actions.

Mr. Conner has been treated at the [Weems] Mental Health Center for a number of years and has a Schizophrenic diagnosis. We have retained this diagnosis, although he has shown few if any of the symptoms of this disorder during his stay in the hospital. He is on medication and this could account for the lack of symptoms. We have given him a diagnosis of Personality Disorder Not Otherwise Specified to reflect a long-standing pattern of social discomfort, excessive dependency, and a tendency to take out his anger in indirect and passive ways.

*Id.* at 611.

The Mississippi Supreme Court also stated that it "found no indication that Conner's attorney acted in ignorance of the law when he failed to call any mental health professionals as witnesses." "Based on the evaluation from Whitfield," said the Court, "it hardly seems that further evidence of Conner's alleged personality disorders was necessary. Further, the affidavits of the experts Conner now claims should have been called to testify do little more than establish that he once had been diagnosed as schizophrenic, apparently failed to take his medication on a regular basis and had a history of substance abuse." *Conner*, 684 So.2d at 612.

So, the Mississippi Supreme Court found that investigations and affidavits Conner claims to have been necessary to his defense actually seemed unnecessary. The evaluation from Whitfield was already a part of the evidence, and the Whitfield evaluation also took into consideration the Weems Community Mental Health Center evaluation touted by Conner.

The Mississippi Supreme Court also considered trial counsel's hindsight that, believing his client to be innocent, he devoted all of his energies to the guilt phase of the trial and did not contact any mental health professionals in preparation for the sentencing phase. Thus, according to trial counsel, by the time he realized that evidence of mental illness might be the only hope for reducing Conner's sentence, he was unable to secure the necessary expert witnesses. The Court noted that, "[w]hile it might be tempting to argue that Conner was prejudiced by his attorney's lack of foresight, Conner fails to show that but for the presentation of evidence of his alleged mental illness, the outcome of his trial might have been different." *Id.*, 684 So.2d at 612, citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Court noted that the trial court had before it the evidence concerning Conner's mental health and concluded that presenting the mental evaluations already in evidence once again during the sentencing phase of Conner's trial, even if bolstered by affidavits, would have done little to change the outcome.

This court previously has noted that the affidavits offered by Conner would have shown only that Conner once had been diagnosed as having a split personality, had not taken his medication regularly, and had problems with drugs. This evidence simply does not measure up to situations encountered by the courts in *Lockett*.

Nor does Conner's alleged omitted evidence offend the holding in *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), where the federal dis-

trict court's record established that trial counsel had omitted documents prepared in connection with Williams' commitment when he was 11 years old that dramatically described mistreatment, abuse, and neglect during his early childhood, as well as testimony that he was "borderline mentally retarded," had suffered repeated head injuries, and might have organic brain impairments. The district court's evidentiary hearing revealed that the same experts who had testified on the State's behalf at trial believed that Williams, if kept in a "structured environment," would not pose a future danger to society. *Id.* at 1501.[3] The Supreme Court agreed with the district court's assessment that the "failure to introduce the comparatively voluminous amount of evidence that did speak in Williams' favor was not justified by a tactical decision to focus on Williams' voluntary confession." *Id.* at 1515.

■ In this court's view, the mitigating evidence omitted entirely from consideration in *Terry Williams v. Taylor* far outweighs the evidence touted by Conner in the instant case. Further, Conner, on the other hand, submits evidence of only a marginal value, which already was part of the trial record, and of which his attorney fully was aware. Accordingly, based on the Mississippi Supreme Court's determination that at trial Conner's attorney was aware of all the evidence concerning Conner's mental health and had made this evidence part of the record in the guilt phase of the trial, this court earlier accepted the state court's determination that trial counsel's decision to pursue the case in this manner was not deficient and that no deficient performance resulted in actual prejudice to Conner's defense. *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir.1994),

---

3. As this court previously pointed out in its denial of Conner's first motion to reconsider, in Part IV of the *Williams v. Taylor* opinion, the Supreme Court noted that trial counsel failed to discover or to present documents showing that the defendant's home "... was a complete wreck .... There were several places on the floor where someone had had a bowel movement. Urine was standing in several places in the bedrooms. There were dirty dishes scattered over the kitchen, and it was impossible to step any place on the kitchen floor where there was no trash .... The children were all dirty and none of them had on under-pants. Noah and Lula were so intoxicated they could not find any clothes for the children, nor were they able to put the clothes on them .... The children had to be put in Winslow Hospital, as four of them, by that time, were definitely under the influence of whiskey." App. 528–529.

Additionally, the Supreme Court noted that "[c]ounsel failed to introduce available evidence that Williams was 'borderline mentally retarded' and did not advance beyond sixth grade in school. *Id.* at 595. They failed to seek prison records recording Williams' commendations for helping to crack a prison drug ring and for returning a guard's missing wallet, or the testimony of prison officials who

described Williams as among the inmates 'least likely to act in a violent, dangerous or provocative way.' *Id.* at 569, 588. Counsel failed even to return the phone call of a certified public accountant who had offered to testify that he had visited Williams frequently when Williams was incarcerated as part of a prison ministry program, that Williams 'seemed to thrive in a more regimented and structured environment,' and that Williams was proud of the carpentry degree he earned while in prison." *Id.* at 563–566.

"Of course," noted the Supreme Court, "not all of the additional evidence was favorable to Williams. The juvenile records revealed that he had been thrice committed to the juvenile system—for aiding and abetting larceny when he was 11 years old, for pulling a false fire alarm when he was 12, and for breaking and entering when he was 15. *Id.* at 534–536. But as the Federal District Court correctly observed, the failure to introduce the comparatively voluminous amount of evidence that did speak in Williams' favor was not justified by a tactical decision to focus on Williams' voluntary confession." *Williams v. Taylor*, 120 S.Ct. at 1514–15.

*cert. denied,* 514 U.S. 1071, 115 S.Ct. 1709, 131 L.Ed.2d 570 (1995).

■ Additionally, as this court previously noted, it is well established in the Fifth Circuit that "[t]he failure to present a case in mitigation during the sentencing phase of a capital trial is not, *per se,* ineffective assistance of counsel." *Williams v. Cain,* 125 F.3d 269, 277 (5th Cir.1997), citing *Stringer v. Jackson,* 862 F.2d 1108, 1116 (5th Cir.1988), *vacated and remanded on other grounds,* 503 U.S. 222, 112 S.Ct. 1130, 117 L.Ed.2d 367 (1992); and *West v. Johnson,* 92 F.3d 1385, 1408 (5th Cir.1996), *cert. denied,* 520 U.S. 1242, 117 S.Ct. 1847, 137 L.Ed.2d 1050 (1997); and *Andrews v. Collins,* 21 F.3d 612, 623–25 (5th Cir.1994).

Therefore, having revisited this court's reasons for having denied habeas corpus relief on the basis that trial counsel should have investigated further the matter of Conner's mental health, this court once again concludes that the Mississippi Supreme Court's holding was not contrary to established federal law, was not objectively unreasonable under the standard of *Williams v. Taylor,* and that presentation of Conner's mental health evaluations along with any bolstering affidavits would not have changed the outcome of the sentencing phase of Conner's trial. This matter was well addressed in the state court record, and this alone obviates the need for any additional inquiry to be made by this court. *DeLuna v. Lynaugh,* 873 F.2d 757, 758–60 (5th Cir.), *cert. denied,* 493 U.S. 900, 110 S.Ct. 259, 107 L.Ed.2d 208 (1989).

### THE REQUEST TO SUBMIT AN AMENDED PETITION BASED ON APPRENDI

Conner next contends in his motion to submit an amended petition for habeas corpus relief that his indictment failed to charge him properly with the essential elements of capital murder, citing *Apprendi*

*v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) (decided almost three years after Conner filed his initial petition for habeas corpus relief). *Apprendi* holds that due process requires a jury to decide beyond a reasonable doubt any facts that would authorize an increase in a maximum prison sentence. *Apprendi,* 120 S.Ct. at 2351.

In *Apprendi* a New Jersey defendant was charged with second-degree possession of a firearm for an unlawful purpose. Upon conviction for this crime, the New Jersey statute provided for a sentence of five to ten years. After Apprendi pleaded guilty, the New Jersey prosecutor moved to enhance the sentence under New Jersey's "hate crime" law. Applying the New Jersey hate-crime law, and reviewing the evidence under the "preponderance of the evidence" standard, the judge enhanced Apprendi's sentence from ten to twenty years of imprisonment. *Apprendi,* 120 S.Ct. at 2363.

Once the case was appealed to the United States Supreme Court, the Court undertook to examine the New Jersey hate crime statute that allowed the trial judge to impose an extended term of imprisonment if the trial judge found, by a preponderance of the evidence, that " '[t]he defendant in committing the crime acted with a purpose to intimidate an individual or group of individuals because of race, color, gender, handicap, religion, sexual orientation or ethnicity.' " *Id.* The Court concluded that except for the fact of a prior conviction, any fact that might increase a criminal penalty beyond the statutory maximum for the offense charged must be presented to the jury and proven beyond a reasonable doubt. *Id.* at 2351–53. Applying this principle, the Supreme Court concluded that a sentence enhancement under New Jersey's hate crime statute—which allowed the trial court to increase the max-

imum sentence for the underlying offense if it found by a preponderance of the evidence that the defendant "acted with a purpose to intimidate an individual ... because of race"—violated due process because the factual basis for the enhancement had not been found by a jury on the basis of proof beyond a reasonable doubt. *Id.* at 2351.

■ Conner now contends in his motion to submit an subsequent or amended petition that *Apprendi* announces a new rule of constitutional law which likely is to be applied retroactively. This court recognizes that the rule announced by the Supreme Court in *Apprendi* is a new rule of constitutional law that was not available to Conner when he filed his petition for a writ of habeas corpus on May 30, 1997. However, Title 28 U.S.C. § 2255 provides in pertinent part that a second or successive motion for habeas corpus relief must be certified by a three-judge panel of a Circuit Court pursuant to Title 28 U.S.C. § 2244 [4] to contain a claim pursuant to "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." Inasmuch as Conner seeks to file a new or amended petition based on the *Apprendi* decision, his request for relief is one which this court cannot grant. This court has found no ruling by the United States Supreme Court which declares *Apprendi* to be retroactive to cases on collateral review. *See In re Tatum,* 233

F.3d 857, 859 (5th Cir.2000) (finding no United States Supreme Court opinion that makes *Apprendi* apply retroactively on collateral review). Thus, pursuant to Title 28 U.S.C. § 2244(b)(3)(C), such a request may be granted in this case only by a three-judge panel of the United States Circuit Court of Appeals for the Fifth Circuit, and then only if the United States Supreme Court ever declares that *Apprendi* will be applied retroactively to cases now on collateral review.

However, even if *Apprendi* already was being applied retroactively to cases on collateral review, this court is persuaded that Conner's claim in this regard is without merit. *Apprendi* holds that any fact (except the existence of a prior conviction) that increases a sentence beyond the statutory maximum for a particular offense must be submitted to the jury and proved beyond a reasonable doubt. In this court's view, if life imprisonment is taken as a statutory maximum sentence, and the death penalty is considered to be an enhancement beyond the maximum, then the requirement of *Apprendi* has been met in the instant case. Whereas in *Apprendi* the hate crime was never considered by a jury, the enhancing elements of robbery and kidnaping were submitted to a jury in the instant case. Conner was charged with having murdered the victim Celeste Brown during the commission of a kidnaping and a robbery.[5] As noted by the Mississippi Supreme Court, the trial court in-

---

**4.** Title 28 U.S.C. § 2244(b)(3)(C) provides that "[t]he court of appeals may authorize the filing of a second or successive application only if it determines that the application makes a prima facie showing that the application satisfies the requirements of this subsection." Section 2244(b)(3)(B) provides that a Court of Appeals must authorize this court to hear a successive petition.

**5.** Conner's indictment states that "Ronnie Lee Conner in said county on the 1st day of Janu-

ary, 1990 did willfully, unlawfully, and feloniously kill and murder Celeste Brown, a human being, without authority of law, with or without any design to affect her death while engaged in the crimes of robbery and kidnaping by stabbing her to death, making this a capital offense in violation of Mississippi Code Annotated § 97–3–19(2)(E) and 97–3–21 (1972), and contrary to the form of the Statute in such cases made and provided, and against the peace and dignity of the State of Mississippi."

structed the jury concerning the possible aggravating circumstances,[6] including the contemporaneous commission of kidnaping and robbery, and explicitly informed the jury that they must unanimously find, beyond a reasonable doubt, that one or more of the aggravating circumstances (commission of robbery or kidnaping) were present in order to return the death penalty. The trial court also instructed that, "[i]If none of these aggravating circumstances are (sic) found to exist, the death penalty may not be imposed." The jury had heard one witness testify as an eyewitness to the kidnaping of Celeste Brown, while another witness testified that Conner had Celeste Brown's ring and a large amount of cash[7] in his possession soon after the murder occurred. This witness also repeated Conner's boast about having just killed someone.

Conner does not contest the sufficiency of the evidence, nor the trial court's instruction. Instead, Conner contends that the indictment did not contain enough language about kidnaping and robbery to charge adequately the underlying felonies (aggravating circumstances), and, therefore, did not sufficiently charge him with capital murder.

■ The Due Process Clause of the Fourteenth Amendment requires that whatever the charging method the state chooses to employ, it must give a criminal defendant fair notice of the charges against him in order to permit adequate preparation time for his defense. *See*

*Jackson v. Virginia,* 443 U.S. 307, 314, 99 S.Ct. 2781, 2786, 61 L.Ed.2d 560 (1979).

In *Liner v. Phelps,* 731 F.2d 1201 (5th Cir.1984), the petitioner's challenge to the validity of his Louisiana conviction for first degree murder was predicated solely on the alleged defectiveness of the wording of the indictment. The petitioner contended in his habeas application that the short form of the indictment authorized by Louisiana law subjected him to a meaningless accusatory process, notwithstanding his adequate notice of the circumstances relied upon by the state through a full bill of particulars furnished prior to trial. The Fifth Circuit rejected the petitioner's contentions pointing out that there is no federal constitutional right to an indictment before trial and no federal constitutional right to a grand jury in a state criminal action. *Liner v. Phelps,* 731 F.2d at 1203–04.

Furthermore, the Fifth Circuit consistently has held "that the sufficiency of a state indictment is not a matter for federal habeas corpus relief unless it can be shown that the indictment is so defective that the convicting court had no jurisdiction." *Johnson v. Puckett,* 930 F.2d 445, 447 (5th Cir.1991), citing *Liner v. Phelps,* 731 F.2d at 1203. "In a federal court, habeas corpus can be invoked with respect to indictments only where they are 'so fatally defective' that under no circumstances could a valid conviction result from facts provable under the indictment." *Id.,* citing

---

**6.** Mississippi Code Annotated Section 99–19–101(5)(d) provides that a jury may impose the death penalty if "(t)he capital offense was committed while the defendant was engaged, or was an accomplice, in the commission of, or an attempt to commit, or flight after committing or attempting to commit, any robbery, rape, arson, burglary, kidnapping, aircraft piracy, sexual battery, unnatural intercourse with any child under the age of twelve (12), or

nonconsensual unnatural intercourse with mankind, or felonious abuse and/or battery of a child in violation of subsection (2) of Section 97–5–39, Mississippi Code of 1972, or the unlawful use or detonation of a bomb or explosive device."

**7.** The evidence established that Celeste Brown was carrying about $200.00 in cash on the day she was murdered.

*Johnson v. Estelle,* 704 F.2d 232, 236 (5th Cir.1983).

Rule 7.06 of Mississippi's Circuit and County Court Rules requires that an indictment upon which the defendant is to be tried shall be a plain, concise and definite written statement of the essential facts constituting the offense charged and shall fully notify the defendant of the nature and cause of the accusation. Formal and technical words are not necessary in an indictment, if the offense can be substantially described without them. An indictment shall also include the following:

1. The name of the accused;

2. The date on which the indictment was filed in court;

3. A statement that the prosecution is brought in the name and by the authority of the State of Mississippi;

4. The county and judicial district in which the indictment is brought;

5. The date and, if applicable, the time at which the offense was alleged to have been committed. Failure to state the correct date shall not render the indictment insufficient;

6. The signature of the foreman of the grand jury issuing it; and

7. The words "against the peace and dignity of the state."

*See Nguyen v. State,* 761 So.2d 873, 875 (Miss.2000). All these elements of an indictment under Mississippi's Rule are present in the instant case.

Therefore, inasmuch as this court is without power to consider a new or successive petition without certification from the Fifth Circuit, and inasmuch as *Apprendi* does not offer a new rule of constitutional law which has been declared to be applicable retroactively to cases on collateral review, and, inasmuch as this court is persuaded that this approach has no vitality nevertheless, this court hereby denies Conner's request to submit to this court an amended or successive petition.

## REQUEST TO SUBMIT A NEW PETITION BASED ON PENRY/McCARVER

Once again, Conner seeks to submit a successive (amended) petition based on a new rule of constitutional law which may be declared to apply retroactively to cases on collateral review. In *Penry* the United States Supreme Court vacated Penry's death sentence, stating that the jury instructions given during the punishment phase of Penry's capital murder trial violated the Eighth Amendment by not allowing the jury to give mitigating effect to Penry's mental retardation or abusive upbringing. Conner seeks to have his sentence reviewed on this basis.

Conner also seeks permission to file a successive (amended) petition based upon the Supreme Court's decision to grant certiorari in *McCarver.* The primary question to be presented in the United States Supreme Court's review of *McCarver* is whether the defendant's execution would violate the Eighth and Fourteenth Amendments to the United States Constitution prohibiting cruel and unusual punishment because the defendant is mentally retarded. There has been no showing in the instant case that Conner either is or can be shown to be mentally retarded.

Nevertheless, once again, this court states that pursuant to Title 28 U.S.C. § 2244(b)(3)(C), such a request for a successive petition may be granted only by a three-judge panel of the United States Circuit Court of Appeals, and then only if the United States Supreme Court ever declares that *Penry* or *McCarver* will be applied retroactively to cases now on collateral review.

## CONCLUSION

Having reviewed the basis for Conner's second motion to reconsider [**item # 52**], this court finds said motion not well taken

and the same is hereby denied for the reasons stated. Furthermore, having reviewed Conner's motion to amend his petition [item # 55] which was submitted five months after entry of final judgment in this case, and finding that the motion with the attached petition constitutes a successive petition which must be certified by the United States Court of Appeals for the Fifth Circuit, this court hereby denies Conner's motion to amend his petition.